**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------X
LUCAS NEREO, ARMANDO IZALDE, and DANIEL
MONTACHANA,

                          Plaintiffs,

            -against-

SHLEPPERS HOLDINGS, LLC d/b/a SHLEPPERS
MOVING & STORAGE., UNIVERSAL MOVING LLC, and
ERNESTO DEL VALLE *individually*,

                         Defendants.
------------------------------------------------X

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Case No.:

PLAINTIFF DEMANDS A TRIAL BY JURY

Plaintiffs, Lucas Nereo, Armando Izalde, and Daniel Montachana, by their attorney, The Rose Law Group, PLLC, upon information and belief, complain as follows:

## NATURE OF THE CASE

1. Plaintiffs, individually and on behalf of all other similarly situated current and former hourly employees of Defendants, brings this action against Defendants pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA") and the New York State Labor Law, Articles 6 & 19 ("NYLL") for failure to pay wages due and owed for hours employees were required to report to work, ready to perform work and actually performed work duties, and seeks to recover unpaid back wages, unpaid tips, unpaid overtime, an additional amount as liquidated damages, reasonable attorneys' fees and costs.

2. Plaintiffs also claim that they were not provided the proper notices and statements under New York Labor Law §§ 190 *et seq.*

## JURISDICTION AND VENUE

3. Jurisdiction of this action is conferred upon the Court by § 16(b) of the FLSA (29 U.S.C. §216(b)). Jurisdiction of this Court is also proper under 42 U.S.C. §12101 et. seq.; 29 U.S.C. §2617.

4. Supplemental Jurisdiction is proper over the State law claims pursuant to 28 U.S. Code §

1367.

5. Venue is proper in this district based upon Defendants' residency within Bronx County, State of New York, within the Southern District of New York. 28 U.S.C. §1391(b).

## PARTIES

6. That at all times relevant hereto, Plaintiffs Lucas Nereo, Armando Izalde, and Daniel Montachana ("Plaintiffs") are residents of the State of New York.

7. Plaintiffs were, during all relevant times, employees for Defendants.

8. That at all times relevant hereto, Defendant Shleppers Holdings, LLC d/b/a Shleppers Moving & Storage ("Shleppers Moving") was and is a Domestic Business Corporation duly authorized and existing by virtue of the laws of the State of New York.

9. That at all times relevant hereto, Defendant Shleppers Moving does business in the State of New York.

10. That at all times relevant hereto, Defendant Shleppers Moving is located at 434 E 165th St, Bronx, NY 10456.

11. Defendant Universal Moving LLC ("Universal Moving") was and is a Corporation duly authorized and existing by virtue of the laws of the State of New York.

12. That at all times relevant hereto, Defendant Universal Moving does business in the State of New York.

13. That at all times relevant hereto, Defendant Universal Moving is located at 434 E 165th St, Bronx, NY 10456.

14. That at all times relevant hereto, Defendant Ernesto Del Valle was an owner and manager of Defendant Shleppers Moving.

15. That at all times Defendant Ernesto Del Valle was an owner and manager of Defendant Universal Moving.

16. That at all relevant times, Defendants Shleppers Moving and Universal Moving acted in concert as a single employer and/or joint employer as they shared office space, equipment, employees, and other meaningful aspects of operation of their business such that it qualified as a single enterprise.

17. That at all times relevant hereto, Defendant Ernesto Del Valle was Plaintiffs' supervisor and/or had supervisory authority over Plaintiffs and all other Class Plaintiffs. This included the ability to set shifts and upon information and belief set policies and practices relating to payment of wages.

18. Defendant Shleppers Moving, Universal Moving, and Ernesto Del Valle are referred to herein as "Defendants."

## THE FLSA CLASS

19. While class certification pursuant to FRCP Rule 23 is not required for an FLSA collective action, defining the class of eligible FLSA Plaintiffs is useful, as the Court will be asked to order Defendants to produce the names and addresses and other information of potential opt-in Plaintiffs.

20. The class of eligible opt-in Plaintiffs consists of all persons who worked for Defendants as "foreman", "driver" and "helper" at any time from three (3) years prior to the filing of this case, to entry of judgment in this case (the "Class" and "Class Period," respectively).

21. Although the precise number of putative class members is unknown, and facts upon which the calculation of that number is based are presently within the sole control of Defendants, upon information and belief, there are over fifteen (15) members of the Class who worked for Defendants within the Class Period.

22. There are questions of law and fact common to this Class which predominate over any questions solely affecting individual members of the Class, including whether Defendants

failed to compensate employees at any rate for hours employees were required to be at work, performing work and traveling to and from job sites; whether each employee was paid overtime in weeks when they worked over forty (40) hours; and whether each employee was given the tips to which they were entitled for their work. Often, the hourly rate was less than the minimum wage.

23. Plaintiffs' claims are typical of the claims of the Class. Plaintiffs will fairly and adequately protect the interests of the Class.

24. A collective action is superior to other methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual Plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate Defendant.

25. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

26. At all times relevant to this action, Plaintiffs and other Class Plaintiffs were employed by Defendants within the meaning of the FLSA.

27. At all times relevant to this action, Defendants transacted and transacts commerce and business in excess of $500,000.00 annually or has revenues in excess of $500,000.00 annually, for all applicable periods in question. Further, Plaintiffs were directly involved in interstate commerce.

28. At all times relevant to this action, Defendants willfully failed to pay all Plaintiffs and other Class Plaintiffs for time which Class Plaintiffs are required to be at work and ready to work, performing work and/or traveling from Defendants' offices to a job site in violation of the FLSA. Plaintiffs were also not paid the overtime premium for hours worked in excess of

forty (40) each week. Plaintiffs also were not provided with the tips paid to Defendants on their behalf. Defendants also illegally withheld wages from Plaintiffs for any damage to furniture claimed by their clients and parking or moving violations.

29. At all times relevant to this action, due to Defendants' FLSA violations, Plaintiffs and other Class Plaintiffs are entitled to recover from Defendants their unpaid wages, an additional equal amount as liquidated damages, attorneys' fees, and costs of the action, pursuant to 29 U.S.C. §216(b).

## MATERIAL FACTS

30. Plaintiffs Nereo, Montachana, and Izalde worked fourteen (14) to sixteen (16) hours driving out of New York to Massachusetts, Virginia, Washington D.C., or Connecticut.

31. Each Plaintiff worked tirelessly yet was only paid a small portion of what the New York Minimum wage laws required and did not include any overtime premium for hours over forty (40).

32. Instead, Defendants relied on a presumption that Plaintiffs were not employees, based on the knowing misapplication of the label "independent contractor" to superficially cover their failure to properly compensate Plaintiffs.

33. Further, Defendants maintained no records required of them for any Plaintiffs, including hourly records, wage notices, and wage statements.

   A. **Plaintiff Lucas Nereo**

34. Plaintiff Lucas Nereo ("Nereo") was hired by Defendants in or around April of 2021 as a Mover.

35. Throughout Plaintiff Nereo's employment, his work product was excellent and he was never disciplined for his performance.

36. Throughout his employment, Defendants acted together and he was required to perform work

under both the Shleppers Moving and Universal Moving names. Regardless of which job he performed he was subject to the same policies and practices as the companies were operated identically and out of the same location.

37. Throughout Plaintiff Nereo's employment, Defendants instructed Plaintiff Nereo as to where to perform his work and which jobs he would be performing that day.

38. Plaintiff Nereo, throughout his employment, was required to arrive at work at 7:00 am in order to load materials, receive orders and travel to the worksite.

39. Plaintiff Nereo and all similarly titled employees of Defendants worked between seventeen (17) and nineteen (19) hours each day, sometimes not finishing their work until 2:00 AM.

40. Plaintiff Nereo's schedule varied from 4 to 6 days per week.

41. However, Plaintiff Nereo was not paid for all hours worked as Defendants only compensated eighteen percent of what was earned amongst four employees, regardless of the number of hours worked.

42. Plaintiff was not compensated from the time they arrived at the loading location until the items were delivered and did not pay for travel to the pickup location and the return to the office. This meant that many days Plaintiffs were not paid for significant time spent working and traveling to/from worksites.

43. At all times Plaintiff Nereo was compensated a percentage for which he was compensated regardless of the number of hours worked.

44. Upon information and belief, throughout Plaintiff Nereo's employment Defendants failed to maintain any records for the number of hours worked. On average Plaintiff Nereo worked (17) seventeen hours a day

45. For example, on the week of December 13, 2021 Plaintiffs were scheduled to work four (4) days.

46. On December 13, 2021 Plaintiffs were scheduled to drive from Bronx, New York to Portland, Maine.

47. On December 15, 2021 Plaintiffs were scheduled to drive from Brooklyn, New York, to Scarborough, Maine.

48. On December 17, 2021 Plaintiffs were scheduled to drive from Bronx, New York to Port Chester, New York

49. On December 18, 2021 Plaintiff were scheduled to drive from Syracuse, New York to Bronx, New York. Plaintiff Nereo was only paid $597.00 for that week. This practice continued up to and until the end of Plaintiff Nereo's employment on May 13, 2022.

50. Defendants' policies relating to his FLSA and NYLL claims did not change and were applied to all of Defendants' hourly employees.

51. Further, Defendants did not allow Plaintiff Nereo a break as required by law.

52. Plaintiff Nereo and other similarly situated employees have lost pay to which they are entitled under the FLSA and NYLL and have been damaged in an amount yet to be determined.

    B.    **Plaintiff Daniel Montachana**

53. Plaintiff Daniel Montachana ("Montachana") was hired by Defendants in or around May of 2021 as a Driver and Mover.

54. Throughout Plaintiff Montachana's employment, his work product was excellent and he was never disciplined for his performance.

55. Throughout his employment, Defendants acted together and he was required to perform work under both the Shleppers Moving and Universal Moving names. Regardless of which job he performed he was subject to the same policies and practices as the companies were operated identically and out of the same location.

56. Throughout Plaintiff Montachana's employment, Defendants instructed Plaintiff Montachana

7

on where to go to perform his work and which jobs he would be performing that day.

57. Plaintiff Montachana, throughout his employment, was required to arrive at work at 7:00 am in order to load materials, receive orders and travel to the worksite.

58. Plaintiff Montachana and all similarly situated employees of Defendants worked seventeen (17) and nineteen (19) hours each day, sometimes not finishing their work until 2:00 AM.

59. Plaintiff Montachana's schedule had him working 4 to 6 days per week.

60. For example, on the week of December 13, 2021 Plaintiffs were scheduled to work four (4) days.

61. On December 13, 2021 Plaintiffs were scheduled to drive from Bronx, New York to Portland, Maine.

62. On December 15, 2021 Plaintiffs were scheduled to drive from Brooklyn, New York, to Scarborough, Maine.

63. On December 17, 2021 Plaintiffs were scheduled to drive from Bronx, New York to Port Chester, New York.

64. On December 18, 2021 Plaintiff were scheduled to drive from Syracuse, New York to Bronx, New York. Plaintiff Montachana was only paid $520.00 for that week.

65. However, Plaintiff Montachana was not paid for all hours worked as Defendants only compensated eighteen percent of what was earned amongst four employees.

66. Plaintiff was not compensated from the time they arrived at the loading location until the items were delivered and did not pay for travel to the pickup location and the return to the office. This meant that many days Plaintiffs were not paid for significant time spent working and traveling to/from worksites.

67. Upon information and belief, throughout Plaintiff Montachana's employment Defendants failed to maintain any records for the number of hours worked.

68. This practice continued up to and until the end of Plaintiff Montachana's employment in January of 2022.

69. Defendants did not allow Plaintiff Montachana a break.

   C. **Plaintiff Armando Izalde**

70. Plaintiff Armando Izalde ("Izalde") was hired by Defendants in or around 2019 as a Mover.

71. Throughout his employment, Defendants acted together and he was required to perform work under both the Shleppers Moving and Universal Moving names. Regardless of which job he performed he was subject to the same policies and practices as the companies were operated identically and out of the same location.

72. Throughout Plaintiff Izalde's employment, Defendants instructed Plaintiff Izalde as to where to perform his work and which jobs he would be performing that day.

73. Plaintiff Izalde, throughout his employment, was required to arrive at work at 7:00 am in order to load materials, receive orders and travel to the worksite.

74. Plaintiff Izalde and all similarly titled employees of Defendants worked between seventeen (17) and nineteen (19) hours each day, sometimes not finishing their work until 2:00 AM.

75. Plaintiff Izalde's schedule had him working 4 to 6 days per week.

76. For example, on the week of December 13, 2021 Plaintiffs were scheduled to work four (4) days.

77. On December 13, 2021 Plaintiffs were scheduled to drive from Bronx, New York to Portland, Maine.

78. On December 15, 2021 Plaintiffs were scheduled to drive from Brooklyn, New York, to Scarborough, Maine.

79. On December 17, 2021 Plaintiffs were scheduled to drive from Bronx, New York to Port Chester, New York

80. On December 18, 2021 Plaintiff were scheduled to drive from Syracuse, New York to Bronx, New York. Plaintiff Izalde was only paid $520.00 for that week.

81. However, Plaintiff Izalde was not paid for all hours worked as Defendants only compensated eighteen percent of what was earned amongst four employees.

82. Plaintiff was not compensated from the time they arrived at the loading location until the items were delivered and did not pay for travel to the pickup location and the return to the office. This meant that many days Plaintiffs were not paid for significant time spent working and traveling to/from worksites.

83. At all times Plaintiff Izalde was compensated a percentage for which he was compensated regardless of the number of hours worked.

84. Upon information and belief, throughout Plaintiff Izalde's employment Defendants failed to maintain any records for the number of hours worked.

85. This practice continued up to and until the end of Plaintiff Izalde's employment on March of 2022.

86. Defendants' policies relating to his FLSA and NYLL claims did not change and were applied to all of Defendants' hourly employees.

87. Further, Defendants did not allow Plaintiff Izalde a break as required by law.

88. Plaintiff Izalde and other similarly situated employees have lost pay to which they are entitled under the FLSA and NYLL and have been damaged in an amount yet to be determined.

89. Defendants are and were employers under the FLSA and NYLL as they control the work performed by individuals who suffered under their violation of the law, made the decision to specifically violate the law and have an ownership stake in the company. As such, Defendants are jointly and severally liable for the wage and hour violations detailed herein.

90. Plaintiffs were not provided accurate and truthful wage statements and notices which

complied with New York Labor Law § 190 *et seq* during their employment.

## AS A FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

91. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

92. Defendants willfully employed Class Plaintiffs in the afore-mentioned enterprise and failed to compensate Class Plaintiffs for all hours worked during their employment.

93. Defendants failed to pay any wages for hours worked by Class Plaintiffs as described herein and as is required by the FLSA.

94. Further, the average hourly rate for Plaintiffs was below the minimum wage when considering the numerous hours for which they were not compensated.

95. Defendants also failed to provide the overtime premium rate of one and a half times their regular hourly rate as is required by the FLSA.

96. Defendants' failure to comply with the FLSA caused Plaintiffs and Class Plaintiffs to suffer loss of wages and other damages as described and demanded herein.

## AS A SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW

97. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

98. Plaintiffs were employees of Defendants within the meaning of New York Wage Regulations (NYCRR Labor Section 138 et seq.).

99. Defendants failed to pay Plaintiffs any rate of pay for certain hours when they were required to be at work, ready to work, actually performing work and/or traveling to/from work sites.

100. Defendants' failure to comply with the New York Labor Law minimum wage protections

caused Plaintiffs to suffer loss of wages and interest thereon.

101. Defendants' failure to pay proper wages for each hour worked was willful.

102. Defendants also failed to pay overtime pay as is required by the New York Labor Law.

103. Defendants also failed to provide tips paid by clients which were to be delivered to Plaintiffs but were not.

104. Defendants withheld money for vehicular tickets and damages to furniture from Plaintiffs' pay without legal right or justification.

105. Defendants also withheld money when days were missed from work in violation of the law.

106. On account of such violations, Defendants are liable to Plaintiffs for actual, statutory and liquidated damages.

### AS A THIRD CAUSE OF ACTION FOR
### VIOLATION OF NEW YORK LABOR LAW (wage notice and statement)

107. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

108. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§ 190 et seq., including §§ 191, 193, 195, 198 and the applicable regulations thereunder.

109. At all times relevant herein, Defendants, individually and/or jointly, failed and willfully failed to provide Plaintiff with the notice(s) required by NYLL 195(1) – Plaintiffs are therefore entitled to and seek to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL 198 including NYLL 198(1-b).

110. At all times relevant herein, Defendants, individually and/or jointly, failed and willfully failed to provide Plaintiff with the statement(s) required by NYLL 195(3) – Plaintiffs are therefore entitled to and seeks to recover in this action the maximum recovery for this

violation, plus attorneys' fees and costs pursuant to NYLL 198 including NYLL 198(1-d)

## JURY DEMAND

111. Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants:

A. Certifying a Collective Class for all Class Plaintiffs and permitting notice be sent to all Class Plaintiffs with the option to join;

B. Awarding all wages not paid as required under the FLSA and NYLL, plus liquidated damages under both the NYLL and the FLSA and interest;

C. Declaring that Defendants' policies and procedures violate the FLSA and NYLL

D. Awarding Plaintiffs statutory damages for Defendants' failure to provide wage statements and notices;

E. Awarding damages to the Plaintiffs and Class Plaintiffs to otherwise make them whole for any losses suffered as a result of such unlawful employment practices;

F. Awarding Plaintiffs punitive damages;

G. Awarding Plaintiffs attorney's fees, costs, and expenses incurred in the prosecution of the action;

H. Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: Astoria, New York
November 7, 2022

**THE ROSE LAW GROUP, PLLC**

    **/s/Jesse C. Rose**
Jesse C. Rose (JR-2409)
3272 Steinway Street
Suite 503
Astoria, New York 11103
PH: (718) 989-1864

Fax: (917) 831-4595