UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUCAS NEREO, ARMANDO IZALDE and
DANIEL MONTACHANA

                              Plaintiffs,

              - against -

SHLEPPERS HOLDINGS, LLC d/b/a SCHLEPPERS
MOVING & STORAGE et al,

                              Defendant.

Case No. 22-cv-09505-JGK

**JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**

      I represent the Plaintiffs in the above lawsuit and write jointly with Defendant Shleppers Holdings LLC's counsel to seek approval of the parties' agreement to settle Plaintiffs' claims for unpaid wages, failure to provide accurate wage statements, and failure to provide wage notices. This letter is being submitted as a Request for Approval of Settlement and addresses all relevant issues to settlement. Based upon the information provided herein, the Parties respectfully request that the settlement agreement (attached as Exhibit A) be approved and that Plaintiffs' claims against all Defendants be dismissed with prejudice.

## INTRODUCTION

      This action was filed under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §201, *et seq.*, and the New York Labor Law (the "NYLL") Articles 6 & 19. Plaintiffs allege that Defendants failed to pay the minimum wage and an overtime premium for hours worked. Plaintiffs further allege that they were not provided the proper notices and statements required under NYLL§§ 190 et seq.

      Defendants denied the allegations and further argued extensively during summary judgment that they were not an employer for the Plaintiffs. Plaintiffs argued that there is a joint employer relationship and the Court found that the issue was not to be decided on paper and must be considered by a jury.

## POTENTIAL DAMAGES

      Plaintiffs allege that they were not paid the minimum wage and overtime compensation for all hours worked, excluding tips paid by clients that Defendant allegedly withheld, as well as amounts deducted for vehicular tickets, damage to furniture, or missed work. Specifically, Plaintiffs allege they worked at least forty (40) hours each week and often more due to their workdays being between seventeen (17) and nineteen (19) hours daily, four (4) to six (6) days out of the week.

The following table provides a calculation of potential damages based on the allegations in the

Complaint and applicable NYC Labor Law standards:

### Damages Calculation for Plaintiff Nereo

Plaintiff Nereo claims to have worked from April of 2021 until May 13, 2022, totaling approximately fifty-six (56) weeks. During his employment he worked between four (4) and six (6) days each week and averaged seventeen (17) hours per day. Rather than be paid for the time worked, Plaintiff Nereo received a percentage of earnings regardless of how long he worked. He drove long distances and was required to return. He made only between $70-90.00 per day. Each week, if we average his work to seventeen (17) hours per day and five (5) days per week, he worked a total of eighty-five (85) hours per week. The minimum wage was $15.00 per hour pursuant to NYLL § 652(1)(a) regardless of the number of employees. Thus, he was entitled to 85 * $15.00 = $1,275 per week, not counting overtime. The overtime premium would be forty-five (45) times half of the minimum wage, or 45 * $7.50 = $337.50. The total amount owed is $1,275 + $337.50 less the amount paid, which we calculate as $80 (the average per day pay) times five (5) (the average days per week) or $400. So the damages calculation per week is $1,612.50 - $400 = $1,212.50. Over fifty-six (56) weeks, the total damages are **$67,900.00** for Plaintiff Nereo.

### Damages Calculation for Plaintiff Izalde

Plaintiff Izalde claims to have worked from 2019 until March of 2022, totaling approximately 116 weeks excluding any from 2019. During his employment he worked between four (4) and six (6) days each week and averaged seventeen (17) hours per day. Rather than be paid for the time worked, Plaintiff Izalde received a percentage of earnings regardless of how long he worked. He drove long distances and was required to return. He made only between $70-90.00 per day. Each week, if we average his work to seventeen (17) hours per day and five (5) days per week, he worked a total of eighty-five (85) hours per week. The minimum wage was $15.00 per hour pursuant to NYLL § 652(1)(a) regardless of the number of employees. Thus, he was entitled to 85 * $15.00 = $1,275 per week, not counting overtime. The overtime premium would be forty-five (45) times half of the minimum wage, or 45 * $7.50 = $337.50. The total amount owed is $1,275 + $337.50 less the amount paid, which we calculate as $80 (the average per day pay) times five (5) (the average days per week) or $400. So the damages calculation per week is $1,612.50 - $400 = $1,212.50. Over 116 weeks, the total damages are **$140,650.00** for Plaintiff Izalde.

### Damages Calculation for Plaintiff Montachana

Plaintiff Montachana worked from May of 2021 until January of 2022, totaling approximately forty (40) weeks. During his employment he worked between four (4) and six (6) days each week and averaged seventeen (17) hours per day. Rather than be paid for the time worked, Plaintiff Montachana received a percentage of earnings regardless of how long he worked. He drove long distances and was required to return. He made only between $70-90.00 per day. Each week, if we average his work to seventeen (17) hours per day and five (5) days per week, he worked a total of eighty-five (85) hours per week. The minimum wage was $15.00 per hour pursuant to NYLL § 652(1)(a) regardless of the number of employees. Thus, he was entitled to 85 * $15.00 = $1,275 per week, not counting overtime. The overtime premium would be forty-five (45) times half of the minimum wage, or 45 * $7.50 = $337.50. The total amount owed is $1,275 + $337.50 less the amount paid, which we calculate as $80 (the average per day pay) times five

(5) (the average days per week) or $400. So the damages calculation per week is $1,612.50 - $400 = $1,212.50. Over forty (40) weeks, the total damages are **$48,500.00** for Plaintiff Montachana.

Each Plaintiff will receive the same amount from the settlement: $16,666.67, totaling **$50,000.01** to them after fees and costs.

## THE PROPOSED SETTLEMENT

The Parties have negotiated a settlement of $75,000 total to be paid by Defendant Shleppers in order to settle all claims between the Plaintiffs and the Defendant Shleppers. The parties acknowledge that the settlement agreement will be posted on the court's docket. Plaintiffs are to receive a total cash payment of 1/3 of the total settlement, or $16,666.67.

In exchange for these waivers, Plaintiffs are providing a limited release, only releasing wage and hour claims under the FLSA and NYLL as of the date of the agreement. Exhibit A, p. 3/5. There are no confidentiality or non-disparagement provisions in the agreement, and there are no other terms that would prohibit approval. Exh. A. The payment is to be made within thirty (30) days of approval, as such the Plaintiffs request that the agreement be approved as soon as possible. Exh. A, p. 3/5.

## ARGUMENT

### A. The Proposed Settlement Should Be Approved

When parties settle FLSA claims with prejudice, the settlement must be approved by a district court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).

"Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *Clark v. Ecolab Inc.*, 2010 WL 1948198, at *7 (S.D.N.Y. May 11, 2010). "If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Kochilas v. Nt'l Merchant Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Meigel v. Flowers of the World, NYC, Inc.*, 2012 WL 70324, at *1 (S.D.N.Y. Jan. 9, 2012). In addition,

> [i]n determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (citation and quotation marks omitted).

Here, the result is fair and reasonable and was reached after extensive negotiations and research.

*First*, Plaintiffs' total recovery of $50,000.01 was negotiated in order to ensure payment and avoid prolonged litigation and is a reasonable compromise after years of litigation in federal court. Further, there is a legitimate fear that Defendant Shleppers may win at trial, as described in detail within the Summary Judgment briefs and decision. Further, the other Defendants are in default have not appeared and the risk of never being able to collect against the defaulting Defendants.

*Second*, by settling now, Plaintiffs are able to get paid now rather than waiting for the case to proceed and potentially prevail for a significantly lower amount, nothing, or obtaining a judgment which will never be paid.

*Third*, the settlement agreement here is the product of arm's-length negotiation between experienced counsel, each of whom vigorously represented their respective clients' interests. *See, e.g., Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *3 (E.D.N.Y. Feb. 18, 2011). Specifically, the amount Plaintiffs will receive is based on a compromise between Defendants' claims that they are not liable to Plaintiffs for any damages.

*Fourth*, there has been no fraud or collusion here.  No party has been promised or is receiving anything more than what is set forth in the settlement agreement. The compromise is reasonable for Plaintiffs who wants this settlement to be approved as soon as possible.

*Fifth*, the settlement agreement is being posted on PACER, making it a public document and there is nothing to restrain the Plaintiffs from speaking about this case, the Defendants, or anything else.

### B.  Plaintiffs' Attorneys' Fees and Expenses Should be Granted

Under Plaintiffs' agreement with counsel, The Rose Law Group, PLLC is entitled to one third (1/3) of all recovery, an amount that has regularly been approved in the Eastern District. Plaintiffs' counsel has agreed to waive any costs incurred in the filing and prosecution of the case for purposes of this settlement.

 Plaintiffs' counsel spent significant time preparing the pleadings, service, speaking with Plaintiffs numerous times, appearing for conferences, negotiations with Defendants' attorneys, preparing discovery demands, preparing discovery responses, preparing for mediation, conducting mediation, researching and debating the reasonableness of settlement amounts being sought, conducting depositions, filing a motion for summary judgment, opposing a motion for summary judgment, preparing the settlement agreement, and preparing this fairness letter. Plaintiffs' counsel negotiated the settlement agreement and drafted this request for approval.

Plaintiffs' counsel expended thousands in costs which they are not seeking over and above the third (1/3) that they are requesting, despite the ability to do so under the retainer.

The hourly rate used by Plaintiffs' counsel in the attached summary of hours spent is justified based on the hourly rates typically approved in this district for attorneys with similar

levels of experience and practice as Mr. Rose. He has significant experience litigating employment law cases, including over one hundred in his career where he has appeared, mostly as the primary counsel, in the Eastern District of New York and over one hundred and fifteen where he has appeared, mostly as the primary counsel, in the Southern District of New York. He has successfully argued before the Second Circuit, reversing decisions for two clients in discrimination cases. See *Allen v. City of N.Y.*, 695 F. App'x 614 (2d Cir. 2017); *Lawson v. Homenuk*, 710 F. App'x 460 (2d Cir. 2017). He has served as lead counsel in trials in both the Eastern and Southern Districts which resulted in jury verdicts favorable to his clients. See *Lashley v. New Life Business Institute, Inc. et al*, 13-cv-02683 (BMC) (closed 3/9/15); *Echevarria v. Insight Med., P.C.*, 72 F. Supp. 3d 442 (S.D.N.Y. 2014). These cases do not include the dozens of cases litigated before State Courts, agencies, administrative courts, arbitrations, and those cases which have settled during the EEOC's investigation and ADR processes. He served as lead counsel in trials in State Court resulting in millions of dollars awarded to his clients in wage and hour, breach of contract, and complex corporate cases. See *Perez v. Franco et al*, Index No. 709031/2016 (Queens Supreme Court) ($172,000 verdict returned by Jury in wage and hour case); *Iqbal et al v. Kumar et al*, Index No. 3124/2014 (Nassau County Supreme Court) (verdict returned in plaintiffs' favor for over $1,500,000.00 in total for fraud and breach of contract); *Garas v. Mitsios et al*, Index No. 20657/2012 (Queens Supreme Court) ($414,494.59 judgment obtained for plaintiff in unpaid contract trial). There are dozens of summary judgment decisions filed and decided in favor of clients represented by Mr. Rose, including a case which was the first to permit a superintendent's wife to pursue an unpaid wage claim in the Second Circuit. In his career, Mr. Rose has supervised attorneys, support staff, and interns at various times since 2008 when working at Valli Kane and Vagnini, LLP. In 2011, Mr. Rose started his own practice, now The Rose Law Group, PLLC, and since has worked with various partners and as of-counsel to Derek Smith Law Group; Phillips & Associates; Pervez & Rehman, PC; The Law Office of David H. Rosenberg, PC; The Law Offices of Emiliano Perez; Conde & Glaser LLP; Picerno & Associates; and White, Hilferty & Albanese LLC. Each of these firms has contracted with Mr. Rose to provide lead attorney services for their clients in recognition of his experience and ability in employment and complex litigation. While The Rose Law Group, PLLC is a small firm, its work with other firms which ask him to act as lead and trial counsel in employment and complex litigation cases supports a finding that he should be considered for the highest hourly rate in the Eastern District. Mr. Rose is recognized by Super Lawyers as a Rising Star each year since 2013 through 2024. He is a respected and accomplished attorney with sufficient experience to command a high level of hourly pay in this district. For an attorney of this caliber, this Court has found $500.00 per hour to be reasonable. See Dougherty v. 2With Deli Corp., 2023 U.S. Dist. LEXIS 215998, *6 (SDNY 2023) (citing Bin Gao v. Jian Song Shi, 2021 U.S. Dist. LEXIS 83716, 2021 WL 1949275, at *17 (E.D.N.Y. Apr. 30, 2021); Rodriguez v. 3551 Realty Co., 2017 U.S. Dist. LEXIS 182017, 2017 WL 5054728, at *3 (S.D.N.Y. Nov. 2, 2017)). It is respectfully requested that the hourly rate presented is reasonable, although not relevant to the award of fees which should include the amount agreed to by Plaintiffs in their retainer and in the attached Settlement Agreement.

The total fee sought is $24,999.99, not accounting for costs which are waived as part of the settlement. The total hours expended by Jesse Rose was 63.6 based on contemporaneous records relating solely to the litigation. Exhibit B, Hours Performed by The Rose Law Group, PLLC. Using a rate of $500.00 per hour per hour for Jesse Rose, this would have required Plaintiffs to pay $31,800.00 up front, with no guarantee of success. This further does not include additional hours by clerical staff. Counsel also had costs totaling $1069.50 for deposition transcripts and $400.00

filing fees. See Exhibit C, Receipts for Costs. Instead, they opted for a contingency fee which permitted them to hire experienced and competent counsel without an outlay of fees. Plaintiffs believe the attorney fee award is reasonable because it is (1) fair and based on a reduction of what is due under the contract entered into by Plaintiffs which provides for a contingency fee in lieu of having paid on an hourly basis, and (2) because Plaintiffs' counsel takes almost all cases on a contingency basis and having cases which pay more than an hourly rate permit the firm to take cases which are more difficult and less likely to pay out. See *Mendez v. QL Wholesome Food, Inc.*, 2018 U.S. Dist. LEXIS 58570, at *3-4 (S.D.N.Y. Apr. 4, 2018) ("While the lodestar calculation is significantly lower than one-third of the overall settlement, 'one-third contingency fees . . . are commonly accepted in the Second Circuit in FLSA cases.'") [internal citations omitted]; *Pinguil v. We Are All Frank, Inc.*, 2018 U.S. Dist. LEXIS 88339, at *15 (S.D.N.Y. May 21, 2018) (33 1/3% awarded even though lodestar was almost half); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 U.S. Dist. LEXIS 164069, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit.") (citing *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013). This agreement should be approved expeditiously so that Plaintiffs can collect the moneys owed to them under the attached Settlement Agreement.

## CONCLUSION

For all the foregoing reasons, the settlement should be approved in its entirety. Should Your Honor require any additional information, the parties are available at Your convenience.

Dated: January 7, 2026

/s/Jesse C. Rose
Jesse C. Rose